UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

BETTY SAMUELSON,

       Plaintiff,

                                         Case Number 10-13422-BC
v.                                      Honorable Thomas L. Ludington

COVENANT HEATHCARE SYSTEM,
RELIANCE STANDARD INSURANCE, and
MATRIX ABSENCE MANAGEMENT,

       Defendants.
_____ /

**OPINION AND ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY
JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

      This case arises out of the decision of an ERISA plan administrator to offset a retired person's retirement benefits against her long-term disability benefits. Now before the Court are cross-motions for summary judgment addressing the question of whether the plan administrator's decision was arbitrary or capricious. For the following reasons, the decision was not arbitrary or capricious.

**I.**

      Plaintiff Betty Samuelson, a registered nurse, worked for Defendant Covenant HealthCare System from 1982 to 2007. Incident to her employment, Plaintiff was enrolled in a "group long-term disability plan," a "group retirement income plan," and a "retiree health plan." *See* R. at 1–32 (long-term disability plan), *id*. at 214–29 (retirement income plan), *id*. at 235–36 (retiree health plan). The long-term disability plan's administrator is Defendant Matrix Absence Management; it makes the initial claim determinations. The long-term disability plan's claims

review fiduciary is Defendant Reliance Standard Insurance; it makes final claim determinations.

Reliance is also responsible for paying benefits to eligible plan participants.

**A.**

Resolution of this case principally turns on the interpretation of the long-term disability

and retirement income plans.  First, the long-term disability plan provides in pertinent part:

> BENEFIT AMOUNT. To figure the [long-term disability] benefit amount
> payable:
> > (1) multiply an Insured's Covered Monthly Earnings . . . ;
> > (2) take the lesser of the amount:
> > > (a) of step (1) above; or
> > > (b) the Maximum Monthly Benefit [50 percent of an Insured's Covered
> > > Monthly Earnings] . . . and
> > (3) subtract Other Income Benefits, as shown below, from step (2) above.
>
> We will pay at least the Minimum Monthly Benefit [i.e., "the greater of: (1)
> 10% of the Covered Monthly Earnings . . . or (2) $100] . . . .
>
> OTHER INCOME BENEFITS: Other Income Benefits are:
> > (7) that part of Retirement Benefits . . . that an Insured is eligible to receive
> > under a group retirement plan; and
> > (8) disability or Retirement Benefits under the United States Social Security
> > Act . . . .
>
> Disability and early Retirement Benefits will be offset only if such benefits are
> elected by the Insured or do not reduce the amount of his/her accrued normal
> Retirement Benefits then funded. . . .
>
> [Other Income] Benefits above will be estimated if the benefits:
> > (1) have not been applied for . . . .

*Id*. at 19.

Second, the retirement income plan provides that a person may elect either "normal

retirement" or "early retirement," and elect to receive benefits paid as either a "life annuity,"

"period certain annuity," "joint and survivor life annuity," or "lump sum," explaining in a

question-and-answer format:

> WHEN MAY I RETIRE?

Normal Retirement.  Your normal retirement date is the first day of the month following your 65th birthday. . . .

Early Retirement.  You may elect to retire on the first day of any month after your 55th birthday and before your normal retirement date, provided you have completed at least five Years of Service.  The date you choose to retire during that period is called your early retirement date. . . .

On your early retirement date . . . you will be entitled to a monthly benefit calculated in the same way as for normal retirement, but based on your Final Average Compensation, Benefit Service and Integration Level on your early retirement date.  Also, if your benefit starts before you reach normal retirement age, the amount will be reduced for each month you are under normal retirement age at the time payments start. This reduction is necessary because your life expectancy is greater than at normal retirement age and it is expected that benefit payments to you will extend over a greater length of time than if they started at your normal retirement age. . . .

If you do not wish to have your benefit reduced for early commencement, you may postpone commencement of your early retirement benefit until you reach normal retirement age. . . .

HOW WILL MY PENSION BE PAID WHEN I RETIRE?

The optional forms of benefits under the Plan are:

Life Annuity.  This form of payment provides you with a monthly pension for your life only . . . .

Joint and Survivor Life Annuity.  This form of payment provides a reduced monthly benefit to you during your life and a benefit equal to 50%, 75% or 100% of the monthly pension you were receiving during your life, payable to the person you designate as your beneficiary. . . .

Lump Sum.  This form of payment is available only if the lump sum value of your benefit does not exceed $10,000 and provides a single lump sum payment.

*Id.* at 218–21.  "Before you can receive a benefit under the Plan," the retirement income plan

continues, "an application must be submitted in writing to the Committee on forms available

from the Committee." *Id.* at 223.

The third plan, the "Covenant Retiree Health Plan," although not essential to the resolution of this matter, is also relevant as it affected Plaintiff's decisions in this case. R. at 235–36. In pertinent part, it provides retired employees continued health care coverage, as well as a "fixed dollar credit" (in Plaintiff's case, $36,000), which may be used to pay health care premiums or costs. Covenant employees are entitled to the benefit when they retire, provided that they "receive a Covenant pension check." *Id*.

**B.**

On March 12, 2007, Plaintiff ceased working, took a leave of absence, and began receiving short-term disability benefits. She was fifty-seven years old at the time. On June 1, 2007, Covenant wrote to her: "According to the information provided to you at the time of your request for a leave of absence, and in keeping with Covenant's policy number 110, your entitlement to 12-weeks of job protection under the Family Medical Leave Act will expire on June 5, 2007." R. at 185. The letter continued:

> Once your job protection expires, your manager has the option to post your position if he/she chooses to do so. However, if your position is posted, you may apply as an internal candidate for an entire year from the start date of your current Leave of Absence. If you do not secure a position by March 13, 2008, separation paperwork will be completed and your employment status with Covenant HealthCare will be terminated.

*Id*. The letter did not mention retirement. Plaintiff, seriously ill, did not return to work. And her short-term disability benefits lapsed on September 30, 2007.

On October 16, 2007, Covenant provided Plaintiff with pension calculation sheets. Estimating the various payment options amounts Plaintiff was eligible to receive, the documents explained that the monthly payment would depend on whether she chose to start receiving benefits at the "normal retirement age" (the normal retirement option) or immediately (the early retirement option), and depending on whether she elected a life annuity (either for the remainder

-4-

of her life or for 120 certain payments) or joint and survivor life annuity (for either 50, 75, or 100 percent of the remainder of her surviving beneficiary's life).  *Id*. at 190–92.  "We ask that you notify the Human Resources department," the letter continued, "to let them know the date you would like to start your pension benefits."  *Id*. at 190.

Plaintiff chose to receive early retirement benefits, and selected a joint and 100 percent survivor life annuity payment plan.  This resulted in the lowest monthly retirement benefit payment available to Plaintiff, with the largest potential payment available to her surviving beneficiary.  *See* R. at 191.  On March 1, 2008, Covenant began making monthly retirement income payments to Plaintiff of $982.96.  Pursuant to the retiree health plan, Plaintiff also received the $36,000 "fixed dollar credit" to use for heath care expenses.

On March 3, 2008, Matrix wrote to Plaintiff, explaining that it had determined that Plaintiff was totally disabled as of March 12, 2007, and approved her long-term disability claim retroactive to October 8, 2007.  *See id*. at 341 (the plan has a mandatory "elimination period" of 180 days from the date of disability before long-term disability benefits take effect).  The letter explained that Plaintiff's "gross monthly benefit is $2,193.28 (less other income and applicable taxes) payable in accordance with the terms of the group policy."  *Id*.

In July 2008, the Social Security Administration issued Plaintiff a notice of award, explaining that it had found Plaintiff was disabled as of September 2007, and awarding monthly disability benefits of $1,733.  *Id*. at 249.

The following month, Matrix wrote to Plaintiff that her long-term disability benefits had been recalculated in light of Plaintiff's Social Security disability benefits and her retirement benefits.  *Id*. at 198–201.  "As your pension and your Social Security Disability benefits are offsets," the letter explained, "we have recalculated your benefits accordingly."  R. at 198.

Plaintiff's gross monthly benefits, the letter reiterated, were $2,193.28.   Her monthly offsets were $2,755.96 ($1,733 in Social Security disability payments plus $982.96 in pension payments).   Because the offsets exceeded the gross benefits, the "minimum monthly benefit" provision was triggered.   Plaintiff's monthly long-term disability payments were "recalculated" from approximately $2,200 to about $220. *Id.* at 200.

Plaintiff appealed this decision to Reliance.   *Id.* at 207–210.   In December 2008, a plan administrator from Reliance, Laura Quinn, informed Plaintiff that the recalculation was correct, explaining: "Both the SSD and pension benefits are applicable offsets from [Plaintiff's long-term disability] benefits."   R. at 207.   In pertinent part, the plan administrator determined: "Information in the claim file documents that [Plaintiff] voluntarily opted to begin receiving pension benefits from her former employer," elaborating:

> We note that you are not disputing the reduction due to SSD.  However, your correspondence . . . asserts that [Plaintiff's] retirement benefits should not be offset from her [long-term disability] benefits.  You essentially argue that your client was "forced" into early retirement (versus electing retirement benefits), therefore [Reliance] should not reduce her Monthly Benefit.  We have reviewed the documentation enclosed with your letter and are not persuaded by your contentions.  The retirement benefits issued to [Plaintiff] constitute other income according to the terms of the group Policy . . . .

> Information in the claim file documents that [Plaintiff] voluntarily opted to begin receiving pension benefits from her former employer.  We considered the correspondence from [Covenant] to [Plaintiff], dated 6/1/07.  The letter informed your client of her rights under the Family Medical Leave Act regarding job protection, and under Covenant's internal rules under "policy number 110"; it makes no reference to her retirement. . . .  Indeed, your own correspondence contradicts your argument that [Plaintiff] was "forced" to accept pension benefits.  For instance, you state, "[Plaintiff] was compelled to accept early retirement . . . ."  Your letter goes on to state, "Her choice was. . ."  Clearly your client made a lifestyle decision to begin receiving pension benefits.

> Nevertheless, the group Policy does not differentiate between a scenario in which the Policyholder mandates its employee to accept pension benefits and a scenario whereby the Insured elects early retirement.  Rather, the Policy allows [Reliance] to reduce an individual's [long-term disability] benefits due to benefits he or she

"is eligible to receive under a group retirement plan."  There is no disputing that [Plaintiff] is receiving such benefits.

You further assert that [Plaintiff] is receiving a lesser amount of pension benefits from Covenant Health as a result of applying for early retirement.  This may be true, however you are again referring to an employer/employee circumstance that is not relevant to [Plaintiff's] claim with [Reliance].

Based on our review of all materials provided to [Reliance], we agree with the Claims Department's decision to reduce [Plaintiff's] Monthly benefit by the amount of her monthly SSD benefits and monthly pension benefits.  Pursuant to the terms of the Policy, these benefits are applicable offsets to [Plaintiff's long-term disability] claim.

*Id*. at 208–09 (emphasis omitted).  "Please be advised that our claim decision is now final," the letter concluded, "as [Plaintiff] has exhausted any administrative remedies available to her under the terms of the Policy."  *Id*. at 209.

## C.

In August 2010, Plaintiff filed suit in this Court, alleging violations of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001–1461.  Reasserting the arguments made to Reliance, Plaintiff challenges the decision to offset the $982.96 in pension payments against her long-term disability benefits (Plaintiff does not challenge the offset of the Social Security disability payments).  On January 11, 2011, the Court entered an order denying Plaintiff's request for discovery.  ECF. No. 17.  "Generally," the Court explained, "in cases subject to ERISA, the scope of review in federal district court is limited to the administrative record because the court is only permitted to consider the evidence that was presented to the plan administrator."  *Id*. at 1 (citing *Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 618 (6th Cir. 1998)).  "The Court's review will be limited to the administrative record," the order concluded.  *Id*. at 3.

Now before the Court are the cross-motions for summary judgment of Plaintiff (ECF No. 25), Defendants Reliance and Matrix (ECF No. 27), and Defendant Covenant (ECF No. 28). Plaintiff argues that she is entitled to summary judgment because she did not elect to receive early retirement benefits — she was coerced into accepting them. Defendants argue that they are entitled to summary judgment because the plain language of the long-term disability plan allows Reliance to offset Plaintiff's early retirement income for two independently sufficient reasons: because Plaintiff elected to receive the retirement benefits, and because the early retirement benefits did not reduce the amount of her "accrued normal retirement benefits then funded."

A hearing was held on the motions on October 25, 2011.  At the conclusion of the hearing, the matter was taken under advisement.  After examining the record and considering the arguments of counsel, the Court will grant Defendants' motions, deny Plaintiff's motion, and dismiss the complaint with prejudice.

## II.

### A.

The arbitrary and capricious standard applies to the review of Reliance's claim, the parties have agreed by stipulation filed on February 9, 2011.  ECF. No. 19.  As a matter of law, they are correct — the plan grants Reliance "the discretionary authority to interpret the Plan and the insurance policy and to determine eligibility for benefits."  R. at 15.

When an ERISA-qualified plan "expressly grants the administrator discretionary authority to determine eligibility for benefits," courts "review the administrator's decision to deny benefits using the highly deferential arbitrary and capricious standard of review."  *Killian v. Healthsource Provident Admins., Inc.*, 152 F.3d 514, 520 (6th Cir. 1998) (internal quotation marks omitted) (quoting *Yeager v. Reliance Standard Life Ins. Co.*, 88 F.3d 376, 380 (6th Cir.

1996)).  "When it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious."  *Id.* (quoting *Perry v. United Food & Commercial Workers Dist. Unions 405 & 442*, 64 F.3d 238, 241 (6th Cir. 1995)).  "[T]he least demanding form of judicial review of administrative action," *id.*, courts will uphold the decision "if it is the result of a deliberate principled reasoning process, and if it is supported by substantial evidence." *Id.* (quoting *Baker v. United Mine Workers of Am. Health & Ret. Funds*, 929 F.2d 1140, 1144 (6th Cir. 1991)).  When a plan administrator both administers and funds the plan, however, the conflict of interest is a factor for the court to consider in evaluating the administrator's decision.  *Firestone Tire & Rubber v. Bruch,* 489 U.S. 101, 109 (1989).

The Court's review is limited, however, as "a plan administrator cannot support its argument on appeal with a fact not relied upon in its initial coverage determination." *Kovach v. Zurich Am. Ins. Co*., 587 F.3d 323, 332 (6th Cir. 2009) (discussing *Shelby Cnty. Health Care Corp. v. Majestic Star Casino, LLC*, 581 F.3d 355, 368–69 (6th Cir. 2009)). Likewise, the court will "consider only the facts known to the plan administrator at the time he made his decision." *Smith v. Ameritech*, 129 F.3d 857, 863 (6th Cir. 1997) (quoting *Yeager*, 88 F.3d at 381).

A motion for summary judgment will be granted if the "movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The Court must view the evidence and draw all reasonable inferences in favor of the non-moving party and determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Anderson*, 477 U.S. at 251–52.  The party opposing the motion may not "rely on the hope that the trier of fact will disbelieve the movant's denial of a

disputed fact," but must make an affirmative showing with proper evidence in order to defeat the motion.  *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989).

## B.

"[E]arly Retirement Benefits will be offset only if such benefits are elected by the Insured or do not reduce the amount of his/her accrued normal Retirement Benefits then funded," the long-term disability benefit plan provides.  R. at 19.  "Or," of course, is disjunctive.  *See, e.g.*, *U.S. Bank Nat. Assoc. v. E.P.A.*, 536 F.3d 199, 206 (6th Cir. 2009).  Thus, the terms of the long-term disability policy provide two independently sufficient grounds for offsetting early retirement benefits: (1) "if such benefits are elected by the Insured"; or (2) if such benefits "do not reduce the amount of [the Insured's] accrued normal Retirement Benefits then funded."

In this case, the plan administrator's decision focused on the first ground — that Plaintiff "elected" the early retirement benefits.  *See* R. at 207–09.  "The word 'elect' is synonymous with 'choose.' "  *Pemberton v. Reliance Standard Life Ins. Co.*, No. 08–86–JBC, 2011 WL 1314888, at *2 (E.D. Ky. 2011) (mem.) (citing *Webster's II New Riverside University Dictionary* 421 (1984)); *see Do Sung Uhm v. Humana, Inc.*, 620 F.3d 1134, 1147 (9th Cir. 2010) ("Although the term 'elected' is not defined, we discern from the above regulations that an eligible individual 'elects' a Part D plan when he submits an enrollment form to the Part D sponsor."); *cf. de Nobel v. Vitro Corp.*, 885 F.2d 1180, 1183–84 (4th Cir. 1989) (using "electing" as synonymous with "selecting" the type of retirement benefit).

Here, Plaintiff made several choices regarding her early retirement benefits.  *See* R. at 190–92.  She could have chosen to defer the payment of her retirement benefit until age sixty-five (the "normal retirement" option).  She chose instead to start receiving benefits immediately (the "early retirement" option).  Demonstrating her intent to elect the early retirement option,

Plaintiff submitted her selection to Covenant's human resources department. Indeed, Covenant was only authorized to start paying early retirement benefits upon the employee's election. *See id*. at 190.

Similarly, Plaintiff could have chosen to receive her benefits as a life annuity for as long as she lived. Or she could have chosen a life annuity with 120 certain payments. Instead, she chose a joint and survivor life annuity. (Her accrued funding was too large to be eligible for the lump sum payment option, which was capped at $10,000.) Her selection of a joint and survivor life annuity, in turn, created new choices. Plaintiff could have chosen a joint and 50 percent survivor life annuity, which would have maximized the amount paid during her life and decreased payments to her beneficiary thereafter (this is the default plan, which a participant may elect to opt out of). She could have chosen a joint and 75 percent survivor life annuity, which would have decreased the amounts during her life and increased amounts paid to her beneficiary thereafter. She chose, instead, a joint and 100 percent survivor life annuity. This selection minimized the amounts paid during her lifetime and maximized amounts paid to her beneficiary thereafter. Because of Plaintiff's decisions, the plan administrator did not act arbitrarily or capriciously in concluding that Plaintiff "elected" early retirement benefits.

Plaintiff nevertheless argues that she did not "elect" the early retirement benefits — "she was forced to take them since[] she would have lost the right to receive those benefits in the future." Pl.'s Br. Opp'n Defs.' Mot Summ. J. 9, ECF No. 33 ("Pl.'s Opp'n Br."); *see also* Pl.'s Br. Supp. Pl.'s Mot. Summ. J. 7–10, ECF No. 25. Plaintiff's argument is contradicted by substantial evidence in the record. The pension calculation sheets which Covenant sent to Plaintiff on October 16, 2007, for example, provide Plaintiff with option to select the "normal retirement date," deferring the start of the payments until 2014. *See* R. at 190–91. Plaintiff

chose, instead, to receive early retirement benefits immediately, rather defer them until 2014. Moreover she chose the specific type of retirement benefit she wished to receive, modifying it from the default plan, the joint and 50 percent survivor annuity, to the joint and 100 percent survivor life annuity instead. *See* R. at 192. Again, the administrator reasonably concluded that Plaintiff "elected" her early retirement benefits.[1]

Similarly, Plaintiff argues that she was coerced into taking the early retirement benefit in order to receive the $36,000 "fixed dollar credit" pursuant to the retiree health plan. Although Plaintiff was undoubtedly influenced by this consideration, nothing in the record suggests that this sum deprived Plaintiff of her free will in electing to receive the early retirement benefits rather than defer the benefits until normal retirement age. *See Barnett v. Int'l Tennis Corp.*, 263 N.W.2d 908, 913 (Mich. Ct. App. 1978) ("Duress exists when one by the unlawful act of another is induced to make a contract or perform some act under circumstances which deprive him of the exercise of free will." (quoting *Hackley v. Headley*, 8 N.W. 511 (Mich. 1881))); *see generally Restatement (Second) of Contracts* § 175 (1981). Nothing suggests that posing this economic choice constituted "unlawful act on the part of the defendant[s]." *Transcontinental Leasing, Inc., v. Mich. Nat. Bank of Detroit*, 738 F.2d 163, 166 (6th Cir. 1984) (citing *Barnett*). Plaintiff made

---

[1] As an aside, it should be noted that this is not a case in which Plaintiff elected not to receive early retirement benefits yet had those benefits imputed to her and offset against her long-term disability benefit payments. The plan defines "other income benefits" to include not only those retirement benefits that an insured individual actually receives, but also those that the individual "is eligible to receive" yet "ha[s] not applied for." R. at 19. Although it is not clear how this provision interacts with the offset provision, the record contains evidence that Reliance interprets the plan to authorize an offset if an insured elects not to receive early retirement benefits. *Id.* at 209 ("Nevertheless, the group Policy does not differentiate between a scenario in which the Policyholder mandates its employee to accept pension benefits and a scenario whereby the Insured elects early retirement. Rather, the Policy allows [Reliance] to reduce an individual's [long-term disability] benefits due to benefits he or she 'is eligible to receive under a group retirement plan.' "). That scenario, however, is not presented in this case. In this case, Plaintiff actually elected to start receiving early retirement benefits. Accordingly, the dicta in the plan administrator's decision regarding the possibility of imputation does not alter the reasonableness of her dispositive determination that Plaintiff had, in fact, actually elected to start receiving early retirement benefits.

a choice — an undoubtedly difficult choice — but a choice nonetheless, to start receiving early

retirement benefits.  That is all the plain meaning of the plan required.

Finally, Plaintiff argues that the Court should refuse to enforce the offset provisions

"based upon the theory of reasonable expectations of coverage."  Pl.'s Opp'n Br. 10 (citing

*Saltarelli v. Bob Baker Grp. Med. Trust*, 35 F.3d 382 (9th Cir. 1994)).  Plaintiff's argument is

unpersuasive.  Undoubtedly, she would have preferred to have received the full amount of her

long-term disability benefits and the full amount of her early retirement benefits too.  She may

even have expected to be able to receive both.  In an ERISA case like this one, however, "this

court's analysis is governed by the choice of law principles derived from federal common law."

*Jessen v. CIGNA Group Ins.*, --- F. Supp. 2d ----, 2011 WL 2516157, at *7 (E.D. Mich. June 21,

2011) (Lawson, J.) (quoting *DaimlerChrysler Corp. Healthcare Benefits Plan v. Durden*, 448

F.3d 918, 922 (6th Cir. 2006)).  "Under those rules, choice-of-law provisions in an ERISA plan

that prefer one state's laws over another generally will be honored."  *Id.*  In this case, the long-

term disability policy selects Michigan law, providing: "This Policy is delivered in Michigan and

is governed by its laws."  R. at 1.  Michigan law, in turn, has rejected the doctrine of reasonable

expectations.  In 2003, for example, the Michigan Supreme Court wrote: "we hold that the rule

of reasonable expectations has no application in Michigan, and those cases that recognized this

doctrine are to that extent overruled."  *Wilkie v. Auto-Owners Ins. Co.*, 664 N.W.2d 776, 788

(Mich. 2003).  The Court explained:

> [T]he expectation that a contract will be enforceable other than according to its
> terms surely may not be said to be reasonable.  If a person signs a contract
> without reading all of it or without understanding it, under some circumstances
> that person can avoid its obligations on the theory that there was no contract at all
> for there was no meeting of the minds.  But to allow such a person to bind another
> to an obligation not covered by the contract as written because the first person
> thought the other was bound to such an obligation is neither reasonable nor just.

*Id*. at 787–88 (quoting *Raska v. Farm Bureau Ins. Co.*, 314 N.W.2d 440 (Mich. 1982)).  Instead, the court explained:

> The rights and duties of parties to a contract are derived from the terms of the agreement.  As this Court has previously stated, "The general rule [of contracts] is that competent persons shall have the utmost liberty of contracting and that their agreements voluntarily and fairly made shall be held valid and enforced in the courts."

*Id*. at 787 (quoting *Terrien v. Zwit*, 648 N.W.2d 602, 611 (Mich. 2002)).  In this case, the plan provided that "early Retirement Benefits will be offset . . . if such benefits are elected by the Insured."  The plan administrator reasonably concluded that, under this provision, Plaintiff elected to receive early retirement benefits.  Accordingly, Defendants' are entitled to summary judgment.

## C.

The foregoing analysis is sufficient to decide the parties' motions.  The Court is, however, sympathetic to the difficult decision that Plaintiff was faced with in this case.  Consequently, two points are noted in passing which illustrate that, although Plaintiff was faced with a hard choice, she made a wise decision in electing to receive early retirement benefits.

First, an independent review of the record reveals that the early retirement benefit did not actually reduce the amount of Plaintiff's retirement benefits, it simply actuarially adjusted them.  That is, the plan did not have an early retirement "penalty," but simply a recalculation to present value based on life expectancy.  As the retirement plan explained in plain English:

> [I]f your benefit starts before you reach normal retirement age, the amount will be reduced for each month you are under normal retirement age at the time payments start. This reduction is necessary because your life expectancy is greater than at normal retirement age and it is expected that benefit payments to you will extend over a greater length of time than if they started at your normal retirement age.

R. at 219.  Of course, the plan administrator did not reach the merits of whether the early retirement benefits "reduce[d] the amount of [Plaintiff's] accrued normal Retirement Benefits then funded."  *See* R. at 209; *see also Kovach v. Zurich Am. Ins. Co.*, 587 F.3d 323, 332 (6th Cir. 2009) (noting "a plan administrator cannot support its argument on appeal with a fact not relied upon in its initial coverage determination" (citing *Shelby Cnty. Health Care Corp. v. Majestic Star Casino*, *LLC*, 581 F.3d 355, 368–69 (6th Cir. 2009))).  Accordingly, the Court merely notes this in passing, and not as a separate ground for affirming the administrator's decision.

Second, a calculation of the economic consequences of Plaintiff's election reveals that not only did the early retirement benefit not reduce the Plaintiff's accrued retirement benefit, it substantially increased her immediate income.  Plaintiff chose to receive $982.96 in monthly early retirement benefits which, when added to her $1,733 in monthly Social Security disability benefits, resulted in monthly income of $2,755.96.  Moreover, after the offsets, Plaintiff was entitled to an additional $219.33 under the plan's "minimum monthly benefit," resulting in a total monthly income of $2,975.29.  Under the plan, in contrast, her "maximum monthly benefit" was $2,193.28 — that is, the maximum she could receive was capped just below $2,200.  Thus, by electing to start receiving early retirement benefits, Plaintiff reduced the long-term disability payment from $460.28 to $219.33.  But she increased her expected monthly income from $2,193.28 to $2,975.29, an increase of about $800 each month.  On top of this, of course, she added a $36,000 fixed dollar credit that she could use for health care expenses.  Plaintiff made what appears to have been a sound, if difficult, economic decision.  However, it came at a price. The plan administrator reasonably concluded that because Plaintiff had elected to receive early retirement benefits, these benefits could be offset against the long-term disability payments. Defendants are entitled to summary judgment.

-15-

## III.

Accordingly, it is **ORDERED** that the motion for summary judgment of Defendant Reliance Standard Insurance Co. and Defendant Matrix Absence Management Inc. (ECF No. 27) is **GRANTED**.

It is further **ORDERED** that the motion for summary judgment of Defendant Covenant HealthCare System (ECF No. 28) is **GRANTED**.

It is further **ORDERED** that the motion for summary judgment of Plaintiff Betty Samuelson (ECF No. 25) is **DENIED**.

It is further **ORDERED** that Plaintiff's complaint (ECF No. 1) is **DISMISSED WITH PREJUDICE**.

<div style="text-align:right">

s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

</div>

Dated: October 31, 2011

<div style="border:1px solid #000; background:#ccc; width:45%; margin:auto; padding:8px; text-align:center">

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on October 31, 2011.

s/Tracy A. Jacobs
TRACY A. JACOBS

</div>